UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY MOSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:15-CV-615-PPS-MGG |
| ) | |
| NANCY BERRYHILL,[1] Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Jeffrey Mosley appeals the Social Security Administration's decision to deny his application for Social Security disability benefits. An administrative law judge found that Mosley was not disabled within the meaning of the Social Security Act. Mosley raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence. I will, therefore, affirm the decision of the ALJ.

## Background

Jeffrey S. Mosley applied for disability benefits alleging disability as of February 1, 2012. [A.R. at 201.][2] Mosley previously filed applications for disability alleging

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

[2] The administrative record is found in the court record at docket entry 12, and consists of 660 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the Court's Electronic Case Filing page number.

disability beginning October 1, 2010. [A.R. at 110.] On March 1, 2012, an ALJ found that Mosley was not disabled and Mosley did not appeal that decision or request reopening. [*Id.* at 41-43, 111-116.] As such, the issue of Mosley's disability prior to March 1, 2012 is barred by res judicata. 20 C.F.R. § 404.957(c)(1).

An administrative hearing was held in January 2014 in front of Administrative Law Judge Julia D. Gibbs. [*Id.* at 38.] The ALJ issued a decision on July 18, 2014 in which she found that Mosley was not disabled at any time through the date of her decision. [*Id.* at 18.] The Appeals Council denied Mosley's request for review of the ALJ's decision. [*Id.* at 1.]

Mosley was 41 years old at the time of his administrative hearing. [A.R. at 41.] Mosley last worked in March of 2008 as an assembly line inspector at a factory. [*Id.* at 43-44.] Before that, he worked as a maintenance worker for a car company. [*Id.* at 75.] Mosley suffers from a variety of physical and mental health issues, including shoulder pain and anxiety. [*Id.* at 58, 64.]

In recent years, Mosley received medical treatment from a variety of sources. From 2011 to 2012, Mosley sought treatment from Dr. Donald Roegner at the Family Psychiatric Center, but Mosley only met sporadically with Dr. Roegner, who stated that he could not make significant progress with a "flagrant bipolar" if he saw him so infrequently. [*Id.* at 311.] On February 14, 2012, Dr. William Hedrick examined Mosley, diagnosing him with occipital neuralgia and several problems with his shoulders and

2

elbows.  [*Id*. at 339.]  On January 21, 2013, Dr. Russell Coulter-Kern conducted a consultative examination of Mosley for the Social Security Administration; he diagnosed Mosley with Bipolar 1 disorder and assigned him a GAF score of 40-45.  [*Id*. at 399-400.]  In February 2013, Dr. William Terpstra examined Mosley, diagnosing him with Polyarticular Arthralgias—a form of joint pain, Bipolar Disorder, ADHD, and anxiety.  [*Id*. at 402.]  Dr. Terpstra also opined that Mosley "would be able to stand/walk for most if not all of an 8 hour day and could use the upper extremities for lifting/carrying less than 10 [pounds] frequently and over 10 [pounds] occasionally and maintain good balance while doing so during that time frame."  [*Id*.]  On May 5, 2013, Dr. William Shipley examined Mosley and opined that Dr. Russel-Kern's assigned GAF score of 40-45 is not supported.  [*Id*. at 144].  Dr. Shipley also opined that Mosley has "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, and no repeated episodes of decompensation, each of extended duration.  [*Id*. at 143.]  On May 8, 2013, Dr. A. Dobson opined that Mosley can frequently lift twenty five pounds and can stand/walk for about six hours in an eight-hour workday.  [*Id*. at 145.]

Throughout 2013, Mosley was treated by nurse practitioners Monica McMain and Debra Graber, along with Dr. Rafik Farag.  [*Id*. at 480-512.]  On October 30, 2013, Nurse Practitioner Graber examined Mosley and opined that he suffers from bipolar syndrome, filling out a form indicating as follows:  that Mosley suffers "moderate" restriction of

3

activities of daily living, "marked" difficulties in maintaining social functioning, "marked" deficiencies of concentration, and "extreme" episodes of decompensation in work-like settings. [*Id*. at 542.] In late 2013, Mosley began receiving therapy from the Four County Counseling Center, where he saw Mark Reef and Dr. Kathleen Miller. [*Id*. at 565-587.] Mosley also has been seeing Dr. Brian Dierckman for troubles with his shoulders and back, though Dr. Dierckman noted "no acute fracture or dislocation." [*Id*. at 626-629.]

At the hearing, Mosley testified that his mental and physical health issues keep getting worse. Mosley testified that he had "more anxiety" than in previous years, "more difficulty going out in public," that he is "paranoid," and that he hesitates to go anywhere without his wife. [*Id.* at 58-59.] Mosley also testified that he consistently experiences physical discomfort, and that he cannot sit in a single position without shifting his body for more than twenty or thirty minutes. [*Id.* at 61-62.] He also testified that he struggles to lift even a gallon of milk with his right arm. [*Id.* at 63-64]. While Mosley recounted that he struggles to do household chores, he also said that he can cook and mow the lawn, though it can take him a few days to finish the work. [*Id.* at 65, 70.]

The ALJ issued a decision denying benefits. At Step One, the ALJ found that Mosley last met the insured status requirements of the Social Security Act on December 31, 2013. [*Id.* at 23.] Further, the ALJ found that Mosley did not engage in substantial gainful activity during the period from his alleged onset date through the date last

4

insured of December 31, 2013. [*Id*.] At Step Two, the ALJ concluded that Mosley has the following severe impairments: cervicalgia, degenerative disc disease, arthropathy of the right shoulder, obesity, bipolar disorder, depression, and personality disorder. [*Id*.] At Step Three, the ALJ determined that Mosley's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments. [*Id*. at 24-26.]

At Step Four, the ALJ found that Mosley has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a). Here is Mosley's RFC as determined by the ALJ:

> [He can] perform unskilled work at a sedentary level of exertion... that does not require overhead reaching with the dominant right arm or more than superficial contact with coworkers or supervisors.

[*Id*. at 26.] At Step Five, the ALJ concluded that considering the Mosley's age, education, work experience, and residual funcational capacity, there are jobs that exist in significant numbers in the national economy that Mosley can perform, and that a finding of "not disabled" is appropriate. [*Id*. at 32.]

## Discussion

In evaluating Mosley's arguments as to how the ALJ erred, I must keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists

5

of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 474 (7th Cir. 2009). Additionally, the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). "[W]hat matters are the reasons articulated *by the ALJ*." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (emphasis in the original).

    First, Mosley argues that the ALJ erred by crediting the opinions of Dr. William Terpstra, who provided a consultative examination for the Social Security Administration. [DE 21 at 19-20.] As Mosley notes, Terpstra was under criminal investigation for distributing controlled substances at the time he examined Mosley and he had surrendered his medical license at the time of the hearing before the ALJ on January 23, 2014. While these facts are troubling, their timing is important. Terpstra examined Mosley on February 6, 2013. [A.R. at 401.] Terpstra was arrested in April of 2013, had his medical license suspended in October 2013, and he pled guilty in 2014. William G. Terpstra, Indiana Online Licensing, https://mylicense.in.gov/everification/Details.aspx?agency_id=1&license_id=1495785 (last viewed Jul. 7, 2017) (noting a license suspension date of October 31, 2013). In other

words, Terpstra still had a valid medical license at the time he examined Mosley. Social Security regulations state:

> We will not use in our program any individual or entity, except to provide existing medical evidence . . . whose license to provide health care services is currently revoked or suspended by any State licensing authority pursuant to adequate due process procedures for reasons bearing on professional competence, professional conduct, or financial integrity.

20 C.F.R. 404.1503a.

The ALJ did not violate this regulation by considering Dr. Terpstra's opinion because, at the time Terpstra examined Mosley, his license had not yet been revoked or suspended. Courts in other circuits have reached similar conclusions. *See Ortiz v. Comm'r of Soc. Sec.*, No. 15-cv-7602, 2017 WL 519260, at *9 (S.D.N.Y. Feb. 8, 2017) (noting that ALJ's decision to credit or not credit a consulting examiner was not affected by fact that doctor had his license suspended after the examination); *Clark v. Colvin*, No. 12-cv-1116, 2013 WL 3834046, at *11 (D. Del. Jul. 24, 2013) (holding that remand is not appropriate solely because ALJ relied on a consultative examiner whose license was subsequently suspended). Indeed, Mosley's argument in this case is similar to that made in *Clark v. Colvin*, No. 12-cv-1116, 2013 WL 3834046 (D. Del. Jul. 24, 2013). As in that case, Mosley demands a remand solely because an examining doctor subsequently had his license suspended. Mosely essentially asks me to apply a per se rule. Mosley does not assert that Terpstra's findings are false, flawed, or lack foundation, and does not question the validity of Terpstra's findings from the consultative examination. *Id.* at *11. The fact that Terpstra's license was subsequently suspended "is insufficient to warrant

7

remand and further review by the ALJ" because this fact does not "develop plaintiff's case factually." *Id*. Because Mosley does not explain why Terpstra's consultative examination in this case is unreliable, remand is not warranted.

Second, Mosley argues that the ALJ improperly discounted the opinion of consultative psychologist Dr. Russell Coulter-Kern, who provided a GAF score of 40-45 (reflecting "serious" symptoms) and opined that Mosley's overall level of functioning was "low." [A.R. at 400]. I disagree. The ALJ adequately justified her decision to assign little weight to Coulter-Kern. First, the ALJ cited the fact that Mosley reported a "broad range of activities of daily living" to Coulter-Kern. [*Id*. at 30]. Second, the ALJ noted that Dr. Kathleeen Miller provided a higher GAF in her December 2013 assessment. [*Id*.] Third, the ALJ noted that Dr. William Shipley directly challenged Coulter-Kern's assigned GAF in his report. [*Id.* at 31]. Even if I might have weighed the evidence differently than the ALJ, it is not my place to do so, as I must affirm the ALJ if her conclusion is backed by substantial evidence. *Overman,* 546 F.3d, 462 (7th Cir. 2008). Because the ALJ adequately justified her decision to discount the opinion of Dr. Coulter-Kern, she did not err.

Third, Mosley argues that the ALJ erred by refusing to weigh the opinion of Nurse Practitioner Debra Graber. [DE 21 at 21-22.] Of all the medical professionals who examined Mosley, Graber found Mosley's impairments to be the most severe. She opined that Mosley suffers "moderate" restriction of activities of daily living, "marked" difficulties in maintaining social functioning, "marked" deficiencies of concentration, and

8

"extreme" episodes of deterioration or decompensation in work-like settings. [*Id.* at 542.] However, the ALJ gave two good reasons for refusing to weigh Nurse Practitioner Graber's opinion. First, at the time the ALJ drafted her opinion, under 20 CFR 404.1513(a), a nurse practitioner was not an acceptable medical source.[3] As it existed at the time of the ALJ's opinion, 20 CFR 404.1513(d) explained that the Social Security Administration, "in addition to the evidence from the acceptable medical sources . . . may also use evidence from other sources," including nurse practitioners. But just because the ALJ "may" consider evidence from a nurse practitioner, did not mean that she was required to. Second, the ALJ noted that Nurse Practitioner Graber's assessment "consists largely of checked-off responses without detailed medical evidence." [A.R. at 30.] In short, the ALJ gave two reasons for her decision to disregard Nurse Practitioner Graber's opinion that satisfy her burden under the "substantial evidence" requirement.

---

[3]I fully recognize that the regulations have since been amended so that, effective March 27, 2017, Licensed Advanced Practice Registered Nurses are acceptable medical sources. *See* 20 C.F.R. § 404.1502(a)(7). However, the changes do not apply to review of Mosley's claim, because they were promulgated after Mosley filed his claim for disability. *See* 82 FR 5844-01 ("These final rules are effective on March 27, 2017."); *Kirkling v. Berryhill*, No. 2:16-cv-00412-JMS-MJD, 2017 WL 2793969, at *3 n.3 (S.D. Ind. June 28, 2017) (noting that the new rules for agency review of disability claims do not apply retroactively)*; Smith v. Berryhill,* No. 1:16-cv-02231-JMS-MSJ, 2017 WL 2418322, at *5 n.4 (S.D. Ind. June 5, 2017) (same); *Gasko v. Berryhill*, No. 16 CV 8102, 2017 WL 1833191, at *4 n.5 (N.D. Ill. May 8, 2017) (same); *see generally Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Because the amendments apply only to claims filed on or after March 27, 2017, all references to the regulations in this Opinion and Order refer to the prior version.

Fourth, Mosley argues that the ALJ erred by failing to assign weight to the opinions of a few of the doctors that examined Mosley. [DE 21 at 22-25.] Mosley cites a list of medical opinions relating to his back and shoulder maladies. Mosley ignores, however, the fact that the ALJ did in fact discuss or cite to several of the medical opinions that Mosley claims she ignored. [*See* A.R. at 28-29 (ALJ's discussion of Dr. Donald Roegner); *id.* at 27-28 (ALJ's discussion of and citation to an MRI performed by Dr. Brian Dierckman); *id.* at 29 (ALJ discussing a report provided by Mark Reef).]

In addition, Mosley faults the ALJ for failing to assign weight to the opinions of Dr. Rafik Farag, Dr. Brian Badman, Dr. Praveen Perni, Dr. Peter Klim, and Dr. Firas Kara.[4] At its core, Mosley's argument is that remand is required because the ALJ did not explicitly weigh the opinion of every doctor in the medical record. [A.R. at 18-19]. The ALJ, however, need not address every piece of evidence or testimony presented. *Terry*, 580 F.3d at 474. Rather, her findings need only be supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

The ALJ adequately accounted for Mosley's back and right shoulder impairments. Regarding Mosley's back and shoulder pain, the ALJ acknowledged Mosley's conditions and accounted for them in her RFC by providing for work at a "sedentary level of exertion that does not require overhead reaching with the right arm." [A.R. at 27.] In making this finding, the ALJ analyzed a variety of evidence in the record, recognizing

---

[4] While Mosley argues the ALJ wrongly failed to weigh the opinion of Dr. Kara, Mosley did not cite to the particular evidence associated with Dr. Kara in the record that he thinks was relevant.

that some of the evidence pointed in different directions. For example, Dr. Terpstra noted that Mosley's grip strength was 4/5 and his general muscle strength was also 4/5 and also noted that Mosley had normal gait and station. [*Id*. at 28]. Further, the ALJ noted Mosley's statement at his hearing that he can mow the lawn for about forty minutes. [*Id*.] In summary, the ALJ considered the impairments to Mosley's back and right shoulder. She weighed evidence pointing both directions and her ultimate conclusion was supported by substantial evidence.

Furthermore, Mosley fails to explain *why* the evidence allegedly ignored by the ALJ is significant and could potentially alter the outcome of the case. How does that evidence support the finding that Mosley is disabled? As far as I can tell, the evidence Mosley cites merely supports what the ALJ already concluded, that Mosley has impairments in his shoulders and back, and that he should be limited to sedentary work. A claimant cannot obtain remand merely by pointing to a few pieces of evidence in a record of hundreds of pages that the ALJ didn't explicitly discuss. Such a legal rule would make an ALJ's job a futile exercise and incentivize claimants to flood the record with as many pages of barely relevant medical evidence as possible. But that is not the rule. I must determine if the ALJ's conclusions are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Here, they are.

Fifth, Mosley argues that the ALJ failed to "acknowledge any limitation" of Mosley's *left* shoulder. [DE 21 at 27-28.] But the ALJ *did* discuss Mosley's left shoulder,

11

concluding that the evidence "does not show that the claimant has a severe left shoulder impairment." [A.R. at 27]. To support her conclusion, the ALJ cited a December 2013 MRI conducted by Dr. Dierckman that showed only "mild to moderate degeneration" in Mosley's left shoulder. [*Id.* at 27, 548.] The ALJ, therefore, analyzed the evidence regarding Mosley's left shoulder and found that her RFC, which limits Mosley to sedentary work, appropriately accommodated any limitations. While Mosley might disagree with the ALJ's determination, he cannot argue that she did not consider evidence regarding his left shoulder.

Finally, Mosley challenges the ALJ's RFC analysis, but the challenge is without merit. [DE 21 at 25-27.] Mosley argues the ALJ made a "serious factual mistake" by stating that Mosley is capable of "superficial contact with coworkers or supervisors." Mosley then cites to various pieces of evidence in the record suggesting he has poor social skills and accuses the ALJ of cherry-picking. While there is evidence supporting Mosley's argument, there also is substantial evidence pointing in the other direction, which the ALJ relied on in reaching her conclusion. For example, the ALJ noted the opinion of Dr. Terpstra, who did not detect any mental impairment in Mosley, A.R. at 30; the ALJ noted the fact that Dr. Miller provided a higher GAF score than Dr. Coulter-Kern did, *id.*; the ALJ noted Dr. Stacia Hill's opinion that Mosley could superficially relate with coworkers and supervisors, attend to tasks long enough to complete them, and manage the stresses involved with, *id.* at 30, 135; and the ALJ noted Dr. Shipley's opinion that Mosley is capable of performing unskilled work, *id.* at 31. When there is substantial

12

evidence pointing in both directions, an ALJ does not cherry-pick when she embraces one of two possible positions. The ALJ's only obligation is to consider all relevant evidence and create a "logical bridge" to facilitate judicial review of her decision. *Terry*, 580 F.3d at 75. Here, she did just that and I find that her decision is supported by substantial evidence.

## Conclusion

In sum, the ALJ's conclusion that Mosley was not disabled during the relevant time period is supported by the evidence highlighted in her opinion. And even if reasonable minds could differ concerning whether Mosley was disabled, I must defer to the ALJ's decision so long as it is adequately supported, as it is in this case. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Jeffrey S. Mosley's application for a period of disability and disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: July 17, 2017.

                                       s/ Philip P. Simon
                                      **PHILIP P. SIMON, JUDGE**
                                      **UNITED STATES DISTRICT COURT**